1  Mani Sheik (SBN 245487)
2  SHEIK LAW, INC.
   526 Third Street, Suite A
3  San Rafael, CA 94901
   Tel:  (415) 205-8490
4  Fax: (415) 796-0875
   Email: mani@sheiklaw.us
5
   Attorneys for Plaintiff
6  Max Miller

7

8                 **UNITED STATES DISTRICT COURT**

9                **NORTHERN DISTRICT OF CALIFORNIA**

10

11  Max Miller, an individual,                    **CASE NO.:  22-3900**

12              Plaintiff,                          **COMPLAINT**

13  v.                                             1.  Retaliation in Violation of Labor Code
                                                       section 1102.5;
14  Naked Wines plc, a United Kingdom             2.  Retaliation in Violation of Title VII of the
    corporation; Nakedwines.com, Inc., a             Civil Rights Act of 1964;
15  California corporation; and DOES 1            3.  Retaliation in Violation of Government
    through 20, inclusive,                           Code section 12940;
16                                                 4.  Harassment in Violation of Title VII of the
                Defendants.                           Civil Rights Act of 1964;
17                                                 5.  Harassment in Violation of Government
                                                       Code section 12940;
18                                                 6.  Failure to Prevent Discrimination,
                                                       Harassment, and Retaliation;
19                                                 7.  Wrongful Termination in Violation of
                                                       Public Policy;
20                                                 8.  Failure to Pay All Earned Wages at
                                                       Separation of Employment (Labor Code
21                                                     sections 201, 203)
22

23                                                 **REQUEST FOR PUNITIVE DAMAGES**

24

25                                                 **DEMAND FOR JURY TRIAL**

26

27

28

Plaintiff Max Miller alleges:

**JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT**

1.     This Court has jurisdiction over this action pursuant to 28 U.S.C. section 1331 (federal question jurisdiction), as this is a civil action arising under Title VII of the Civil Rights Act of 1964 ("Title VII," at 42 U.S.C. §§ 2000e *et seq.*).

2.     This Court also has jurisdiction over this action pursuant to 28 U.S.C. section 1332 (diversity jurisdiction), as there is diversity of citizenship among the parties—Plaintiff is a Colorado citizen; Defendant Naked Wines plc is a United Kingdom citizen; and Defendant Nakedwines.com, Inc., is a California citizen—and the matter in controversy exceeds $75,000, exclusive of interest and costs.

3.     This Court has supplemental jurisdiction over Plaintiff's related claims arising under state and local laws pursuant to 28 U.S.C. section 1367(a).

4.     Venue is proper in this District under 42 U.S.C. section 2000e-5(f)(3), in that the unlawful employment practices were committed in California, and under 42 U.S.C. section 2000e-5(f)(3), in that the relevant employment records are maintained in this District. Venue is proper in the San Francisco/Oakland Division (Loc. R. 3-2) because a substantial part of the events giving rise to Plaintiff's claims occurred in Napa County, which is in this District.

**THE PARTIES**

5.     Plaintiff Max Miller ("Miller" or "Plaintiff") is a resident of Denver, Colorado. Until he was terminated, he was an employee, as defined by Title VII and the Fair Employment and Housing Act ("FEHA," at Gov. Code §§ 12900 *et seq.*).

6.     Upon information and belief, Defendant Naked Wines plc ("Naked Wines plc") is a public limited company incorporated under the laws of England, United Kingdom, where it is considered a citizen for diversity and alienage jurisdiction. Naked Wines plc is in the business of selling wine directly to consumers via the internet. Its biggest market consists of customers in the United States. Naked Wines plc maintains its office and principal place of business in the United States in Napa, California. At all times material hereto, Naked Wines plc has conducted business in California and has been an employer whose employees are engaged throughout California, and

it is an employer under Title VII and FEHA.

7.     Defendant Nakedwines.com Inc. ("Nakedwines.com") is a corporation organized under the laws of the state of California with its principal place of business at 135 Gasser Drive in Napa, California. At all times material hereto, Nakedwines.com has conducted business in California and has been an employer whose employees are engaged throughout California, and it is an employer under Title VII and FEHA.

8.     At all times pertinent to this complaint, Nakedwines.com was the agent of Naked Wines plc for selling wine to United States customers and for doing business in the United States. Nakedwines.com is the undercapitalized conduit of its master, Naked Wines plc. The executives of one company, except for Plaintiff, thus acted as executives of the other.

9.     Naked Wines plc and Nakedwines.com (collectively, "Naked Wines") are a single integrated employer for the purposes of Title VII and FEHA because their operations are sufficiently interrelated, they are under common ownership and control, they are under common management, and the labor relations and personnel are centralized.

10.     Plaintiff is unaware of the true names or capacities of the defendants sued herein under the fictitious names DOES 1 through 20, but prays for leave to amend and serve such fictitiously named defendants once their names and capacities become known.

11.     Plaintiff is informed and believes, and thereon alleges, that DOES 1 through 20 are the partners, agents, owners, shareholders, managers, or employees of Naked Wines and were acting on behalf of Naked Wines at all relevant times. Plaintiff is informed and believes, and thereon alleges, that each and all the conduct alleged herein was performed by, or is attributable to, Naked Wines plc, Nakedwines.com, and DOES 1 through 20, each acting as the agent for the other, with legal authority to act on the other's behalf. As such, Naked Wines plc, Nakedwines.com, and DOES 1 through 20 are collectively referred to as "Defendants" and the term "Defendants" as used throughout this Complaint also expressly includes DOES 1 through 20. The conduct of any and all Defendants were in accordance with, and represent the official policy of, each and every one of the Defendants.

12.     Plaintiff is informed and believes, and thereon alleges, that at all times material

hereto, Defendants, and each of them, were the agents of each and all other Defendants, and in doing the things alleged herein, were acting in the course and scope of such agency and with the permission and consent of their co-defendants such that each defendant is responsible in some actionable manner for the occurrences, omissions, and injuries alleged herein. Plaintiff is informed and believes, and thereon alleges, that each of the Defendants is in some manner intentionally, negligently, or otherwise responsible for the acts, omissions, occurrences, transactions, and damages alleged herein, and is therefore jointly and severally liable for those damages.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

13.     Plaintiff exhausted his administrative remedies by timely filing a complaint with the Department of Fair Employment and Housing on July 1, 2022. Plaintiff received a Right to Sue notice the same date (file number 202207-17471701). This action is being brought within one year of that notice.

## EXEMPTION FROM ARBITRATION

14.     This case is exempt from arbitration pursuant to the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021, Pub. L. No. 117-90, 136 Stat. 26, which provides in relevant part:

> Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a ***sexual harassment dispute*** or sexual assault dispute. . . no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable ***with respect to a case*** which is filed under Federal, Tribal, or State law and ***relates to*** the sexual assault dispute or ***the sexual harassment dispute***.

(emphases added).

15.     Plaintiff elects to proceed before this Court. This case relates to a sexual harassment dispute (causes of action 4 and 5). What's more, the word "case" means that all claims asserted together in a "case" are precluded from arbitration.

## FACTUAL ALLEGATIONS

16.     Defendants hired Max Miller to be President of Nakedwines.com, effective April 6, 2020, to oversee their American market.

17. Miller's job performance was exemplary. Miller led Defendants' largest market, the U.S. business unit, to historic and unprecedented revenue and profitability growth. For example, during fiscal year 2021 (April 2020 to March 2021), sales grew by 78% and contribution profit increased by 100%. Miller's results in the United States during fiscal year 2021 significantly outpaced Defendants' UK and Australian business units. In recognition of these efforts, Miller received a bonus twice the amount awardable under his employment contract—$400,000, which was equivalent to 100% of his salary.

18. Despite a more challenging post-pandemic consumer environment, Miller continued to lead the U.S. business to sales and profitability growth in fiscal year 2022. According to the "H1 '22 Results Presentation" delivered to company shareholders on November 18, 2021, in the first half of fiscal year 2022 (April 2021 to September 2021), sales in the United States market grew by 7%, and contribution profit increased by 9% versus the first half of fiscal year 2021. Although not publicly communicated, performance in the second half of fiscal year 2022 (October 2021 to March 2022) was considerably better versus the first half of the year. Thus, during the two years Miller was employed with Defendants, he grew sales, contribution profit, and new customer investment by 90%, 140%, and 120%, respectively.

19. During his time with Defendants, Miller assembled and managed a team that included the following female executives: Maritza Martinez-Smith (Chief Financial Officer); Samantha Johnson (Director of Accounting); Seanna Ochoa (Director of Human Resources); Sara Hardin (Human Resources Recruiter); and Corrie Hawksley (Senior Director of Marketing). All of these women have left the company due to Defendants' mistreatment of women.

20. Miller did not learn until it was too late that Defendants have and had a history and culture of the disparate treatment of women. Defendants' culture of misogyny was embodied in their Chief Financial Officer and Director, Shawn Tabak.

21. On August 4, 2021, Martinez-Smith and Johnson made formal complaints of discrimination against Tabak. Martinez-Smith and Johnson claimed that Tabak engaged in illegal discriminatory behavior toward various women, including themselves.

22. On August 10, Defendants' boards of directors hired an outside law firm, Dentons

US LLP ("Dentons"), to conduct an internal investigation related to the discrimination complaints.

23.     On August 13, Miller participated in a first internal investigation interview conducted by Dentons regarding the sex discrimination complaints. During the interview, Miller answered truthfully and confirmed and supported the complaints that Tabak mistreated Martinez-Smith and Johnson (and other women) because of their sex. Miller also identified specific instances of Tabak mistreating other women because of their sex. Miller told Dentons that he had never seen such disregard for women employees in his entire career as he had seen by Defendants and, particularly, by Tabak.

24.     On August 20, Miller participated in a second internal investigation interview conducted by Dentons regarding the sex discrimination complaints. During this interview, Miller again answered truthfully and reiterated and reinforced what he had said in his first interview. Miller also made Dentons aware that Tabak was improperly trying to cause Johnson to separate from Defendants (because of her sex and her having complained of sex-based discrimination) and that Tabak made inappropriate remarks about Johnson and her pregnancy.

25.     In late August 2021, while Dentons was investigating the report of sexual discrimination against Tabak, Tabak unilaterally restructured Nakedwines.com's organization such that the human resources function, which was comprised solely of women at the time, would report directly to him. In response to this reorganization, the entire human resources group of Nakedwines.com resigned.

26.     On or before, September 9, 2021, Dentons issued its report about Martinez-Smith's and Johnson's discrimination complaints against Tabak to Defendants' boards of directors. Tabak and Nicholas Devlin, Nakedwines.com's Chief Executive Officer ("CEO"), are members of those boards of directors and thus received and read the report.

27.     Upon information and belief, Devlin and Tabak learned the substance of Miller's testimony to Dentons from the Dentons report on or before September 9, 2021.

28.     On September 9, Miller and Devlin, his then-immediate supervisor, met at the Saintsbury Winery in Sonoma, California. Upon information and belief, at this point both Tabak

and Devlin knew both of Miller's participation in the Dentons investigation, in which he provided negative though truthful information about Naked Wines' employment practices, and Miller's objections to Tabak's abusive conduct toward women. During the meeting, Devlin ordered Miller to fire Martinez-Smith, even though she had just recently and validly complained of sex-based discrimination and there was no good reason to fire her. Indeed, Devlin only wanted to fire Martinez-Smith because she had complained. Miller refused.

29.    In this meeting, Devlin also ordered Miller to "fix" his "relationship" with Tabak, thus confirming that Devlin knew of Miller's statements to Dentons and also signaling to Miller that Devlin, the CEO, had sided with Tabak and was condoning Tabak's behavior. At this meeting, Miller refused to condone Tabak's behavior.

30.    These orders from Devlin came right after Dentons delivered their findings to Defendants' boards, which include Devlin and Tabak.

31.    On September 10, 2021, Martinez-Smith informed Miller that she intended to leave Defendants because of the discrimination to which she had been subjected by Tabak and Naked Wines and because she was being retaliated against by Tabak and Defendants for complaining about Tabak and participating in the Dentons discrimination investigation.

32.    On September 24, Dentons conducted a third interview with Miller due to Martinez-Smith's recent retaliation claim. Miller answered additional questions, again truthfully, about both Martinez-Smith and Johnson, which questions focused on their performance and work quality. Miller informed Dentons that Martinez-Smith was one of the best finance professionals with whom he had ever worked.

33.    Upon information and belief, Devlin again learned the substance of Miller's third interview testimony from Dentons.

34.    Less than a month later, on October 13, 2021, Miller was demoted because he had engaged in protected activities and told the truth about the toxic, discriminatory workplace that Tabak created and that Devlin and Defendants allowed to thrive. Defendants pushed Miller down a rung on the corporate ladder by creating a Chief Operating Officer ("COO") position between him and Devlin. Defendants did not fire Miller in hopes that he would quit and thus not trigger a

significant severance package (over $200,000) that he would be owed if he were fired without cause.

35.     Naked Wines filled the new COO position with Alicia Kennedy, a woman, to cover up their existing systemic discrimination against women—a failing made clear to Defendants through the Dentons investigation and report. Indeed, Kennedy was brought in to run Defendants' United States business even though she lives and works in Australia and all other executives in the United States business live and work in the United States.

36.     On October 18, 2021, Devlin and Kennedy convened a meeting with Miller. During the meeting, Devlin and Kennedy were critical of Miller for vague and false performance issues. This became the first of many meetings designed to force Miller to quit, which he refused to do.

37.     On October 26, Johnson informed Miller that she was leaving Defendants because of discrimination against her specifically and women generally.

38.     On November 8, Miller received a letter from three anonymous female employees pleading for help concerning Naked Wines' systematic discrimination against women. The letter stated in part: "Female employees cannot thrive at Naked; they are forced to leave the company by aggressive leadership decisions or unsatisfactory working conditions." Miller immediately urged Defendants' human resources and legal departments to address the issues raised in the letter—systematic discrimination against women.

39.     After these departments proved unwilling to respond, Miller escalated the matter to Devlin, Nakedwines.com's CEO. Devlin became infuriated with Miller for raising the issue, and told Miller there would be no further discussion of this topic. Ultimately, Devlin and Defendants did nothing to address the issue raised in the letter or Miller's concerns.

40.     In response to Miller's efforts to stop the discrimination against and harassment of women at Defendants, Defendants, acting in concert and under the direction of Devlin, implemented and engaged in a conspiracy to force Miller to quit by: demoting him, creating a hostile work environment, concocting a negative and false performance review, holding him accountable for failing to meet padded numbers that Defendants themselves had forced Miller to

pad in the first place, and even refusing to provide a Denver office where over 45 employees worked, including Miller. The purpose of these attempts was to force Miller to quit the job he loved.

41.     Pursuant to the announcement of Miller's demotion on October 13, 2021, Kennedy assumed her position as his boss on January 1, 2022. Kennedy never participated in, engaged in, nor provided coaching, guidance, or direction to Miller or to his team. In reality, and for all intents and purposes, Devlin continued to manage and direct Miller and his team. Kennedy was nothing more than a figurehead.

42.     Upon assuming her role as COO, Kennedy began degrading and harassing Miller by making unwelcome flirtatious and comments of a sexual nature about his physique, profile, and face. She did this both in front of Miller's subordinates and when she was alone with him.

43.     Kennedy's inappropriate and unwelcome behavior culminated during Defendants' firm retreat in a shared house near the Winter Park ski resort in Colorado. At the retreat, Kennedy asked Miller nearly every night, if not every night, to get in the hot tub with her. Each time, Miller said no because he felt uncomfortable getting in the hot tub with colleagues, especially his female boss. Nevertheless, and despite (or perhaps because of) Miller's clear and obvious discomfort and refusal, Kennedy continued to insist that her subordinate, Miller, enter a hot tub with her. Also during the retreat, Kennedy made repeated comments about Miller's profile and face—comments she repeated afterwards at other meetings as well. Indeed, Kennedy's conduct was so egregious and inappropriate that a female colleague of Kennedy's and Miller's remarked to Miller that she (the colleague) felt uncomfortable with Kennedy's behavior and considered it inappropriate.

44.     On January 21, 2022, the last evening of the retreat, Kennedy cornered Miller in the kitchen. She again told Miller to get in the hot tub with her. Miller initially made excuses to his new boss as to why he could not join her as she demanded, such as that he had no swimsuit. Kennedy nonetheless insisted that Miller join her in the hot tub, and went so far as to procure a bathing suit for him from another team member. Miller then directly refused Kennedy's advance, and walked away.

45.     Upon information and belief, Kennedy engaged in this behavior to compromise Miller sexually to then drive him out of the company, as part of Defendants' conspiracy against him.

46.     On March 1, 2022, Devlin and Kennedy convened a surprise meeting with Miller. Devlin told Miller that he was fired. Kennedy, Miller's alleged direct supervisor, said nothing and only looked on. Devlin refused to provide Miller with a reason for his firing. Devlin specifically said, though, that Miller was not being fired for cause.

47.     Also on March 1, immediately after Miller's unlawful termination, Devlin and Kennedy met with Miller's Denver-based team, during with Devlin gave the following pretext for Miller's termination: "Max's decisions led to a bad year of performance for Naked Wines." This was a false statement. During this meeting, Devlin and Kennedy also forced the remaining U.S. leadership team to pledge allegiance to them, which the team had no choice but to do for fear of losing their jobs or further retaliation by Devlin and Kennedy against them. Within weeks, the majority of the U.S. leadership team resigned.

48.     Under the terms of Defendants' employment agreement with Miller, Defendants agreed to pay Miller $206,000.04 if they terminated his employment for any reason other than cause.

49.     On March 4, 2022, Defendants terminated Miller's employment for reasons not related to cause. Indeed, that same day, Devlin (Nakedwines.com's CEO) wrote: "In addition to the final pay we will pay the lump sum of $206,000.04 which equates to 6 months salary (this will be subject to all applicable taxes etc) under the terms of your contract for termination without cause."

50.     Defendants did not pay Miller for all wages earned and owing upon the termination of his employment. Indeed, though the employment contract required it and Devlin confirmed the obligation that same day, Defendants did not pay Miller the $206,000.04 he was owed until April 19, 2022—i.e., more than 30 days after his final date of employment.

51.     To this day, Defendants continues to profit from Miller's name, reputation, and goodwill in the industry by using his name in marketing materials. For example, Defendants

continue to include Miller's name in the packing slip sent in every customer package they send. As another example, Defendants continue to use Miller's name and signature across their website.

## FIRST CAUSE OF ACTION

(Retaliation in Violation of Labor Code section 1102.5, Against All Defendants)

52.   Miller realleges and incorporates by reference all prior Paragraphs as if fully set forth herein.

53.   Labor Code section 1102.5 prohibits employers from discharging, constructively discharging, retaliating, or in any manner discriminating against any employee for disclosing information to a person with authority over the employee, or to another employee who has authority to investigate, discover, or correct the violation or noncompliance, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.

54.   From August 13 through September 24, 2021, Miller participated in three internal investigation interviews conducted by Dentons regarding the sex discrimination complaints of his then colleagues, Martinez-Smith and Johnson. During these interviews, Miller answered truthfully and confirmed and supported the complaints that Tabak mistreated Martinez-Smith and Johnson (and other women) because of their sex and that Defendants discriminated against women.

55.   On or before, September 9, 2021, Dentons issued its report about Martinez-Smith's and Johnson's discrimination complaints against Tabak to Defendants' boards of directors. Tabak and Devlin are members of those boards and thus received and read the report.

56.   On October 13, 2021, Miller was demoted and, on March 1, 2022, he was fired (by Devlin, not his immediate supervisor, Kennedy) because: (a) he provided negative though truthful information about Defendants' employment practices in the Denton's investigation; (b) he refused Devlin's September 9, 2021 order to fire Martinez-Smith in retaliation for her complaining about discrimination and a hostile work environment; (c) he refused Devlin's September 9, 2021 order to "fix" his "relationship" with Tabak, who was the perpetrator of the harassment against Martinez-Smith and Johnson (and other women); and (d) after Martinez-Smith settled her case, he

1  continued to speak out against and try to fix the anti-woman hostile work environment at

2  Defendants, where he was President. Miller also vocally fought against and tried to change

3  Defendants' systematic discrimination against women and fought against the conspiracy at the

4  highest levels of the company to keep the issue hidden.

5      57.    As a direct, foreseeable, and legal result of Defendants' conduct, Miller has

6  suffered and continues to suffer substantial losses in employment potential and in earnings,

7  bonuses, deferred compensation, and other employment benefits, and has suffered and continues

8  to suffer substantial embarrassment, extreme and severe humiliation, mental anguish, and

9  emotional distress, all to his damage in an amount according to proof. Miller has incurred and

10  will incur medical and other incidental expenses for treatment by health professionals.

11      58.    Defendants committed the conduct alleged herein maliciously, fraudulently, and

12  oppressively with the wrongful intention of injuring Miller, from a willful improper motive

13  amounting to malice, and in conscious disregard of Miller's rights and for the deleterious

14  consequences of Defendants' conduct. Defendants had actual and constructive knowledge of the

15  conduct described and alleged herein and, through their managing agents and/or supervisors,

16  authorized, condoned, and ratified the unlawful conduct. Miller is thus entitled to recover punitive

17  damages in an amount according to proof.

18      59.    As a result of the conduct alleged herein, Miller is entitled to prejudgment interest,

19  reasonable attorneys' fees, and costs.

20                    **SECOND CAUSE OF ACTION**

21      (Retaliation in Violation of Title VII of the Civil Rights Act of 1964, Against All Defendants)

22      60.    Miller realleges and incorporates by reference all prior Paragraphs as if fully set

23  forth herein.

24      61.    At all times material hereto, Defendants were an employer and Miller an employee

25  as defined by Title VII.

26      62.    Title VII makes unlawful an employer's retaliating against an employee because

27  the person opposed any forbidden practice or filed a complaint, testified, or assisted in any

28  proceeding.

63.    From August 13 through September 24, 2021, Miller participated in three internal investigation interviews conducted by Dentons regarding the sex discrimination complaints of his then colleagues, Martinez-Smith and Johnson. During these interviews, Miller answered truthfully and confirmed and supported the complaints that Tabak mistreated Martinez-Smith and Johnson (and other women) because of their sex and that Defendants discriminated against women.

64.    On or before, September 9, 2021, Dentons issued its report about Martinez-Smith's and Johnson's discrimination complaints against Tabak to Defendants' boards of directors. Tabak and Devlin are members of those boards and thus received and read the report.

65.    On October 13, 2021, Miller was demoted and, on March 1, 2022, he was fired (by Devlin, not his immediate supervisor, Kennedy) because: (a) he provided negative though truthful information about Defendants' employment practices in the Denton's investigation; (b) he refused Devlin's September 9, 2021 order to fire Martinez-Smith in retaliation for her complaining about discrimination and a hostile work environment; (c) he refused Devlin's September 9, 2021 order to "fix" his "relationship" with Tabak, who was the perpetrator of the harassment against Martinez-Smith and Johnson (and other women); and (d) after Martinez-Smith settled her case, he continued to speak out against and try to fix the anti-woman hostile work environment at Defendants, where he was President. Miller also vocally fought against and tried to change Defendants' systematic discrimination against women and fought against the conspiracy at the highest levels of the company to keep the issue hidden.

66.    As a direct, foreseeable, and legal result of Defendants' conduct, Miller has suffered and continues to suffer substantial losses in employment potential and in earnings, bonuses, deferred compensation, and other employment benefits, and has suffered and continues to suffer substantial embarrassment, extreme and severe humiliation, mental anguish, and emotional distress, all to his damage in an amount according to proof. Miller has incurred and will incur medical and other incidental expenses for treatment by health professionals.

67.    Defendants committed the conduct alleged herein maliciously, fraudulently, and oppressively with the wrongful intention of injuring Miller, from a willful improper motive

amounting to malice, and in conscious disregard of Miller's rights and for the deleterious consequences of Defendants' conduct. Defendants had actual and constructive knowledge of the conduct described and alleged herein and, through their managing agents and/or supervisors, authorized, condoned, and ratified the unlawful conduct. Miller is thus entitled to recover punitive damages in an amount according to proof.

68.     As a result of the conduct alleged herein, Miller is entitled to prejudgment interest, reasonable attorneys' fees, and costs.

## THIRD  CAUSE OF ACTION

(Retaliation in Violation of Government Code section 12940, Against All Defendants)

69.     Miller realleges and incorporates by reference all prior Paragraphs as if fully set forth herein.

70.     At all times material hereto, Defendants were an employer and Miller an employee as defined by FEHA.

71.     FEHA makes unlawful an employer's retaliating against an employee because the person opposed any forbidden practice or filed a complaint, testified, or assisted in any proceeding.

72.     From August 13 through September 24, 2021, Miller participated in three internal investigation interviews conducted by Dentons regarding the sex discrimination complaints of his then colleagues, Martinez-Smith and Johnson. During these interviews, Miller answered truthfully and confirmed and supported the complaints that Tabak mistreated Martinez-Smith and Johnson (and other women) because of their sex and that Defendants discriminated against women.

73.     On or before, September 9, 2021, Dentons issued its report about Martinez-Smith's and Johnson's discrimination complaints against Tabak to Defendants' boards of directors. Tabak and Devlin are members of those boards and thus received and read the report.

74.     On October 13, 2021, Miller was demoted and, on March 1, 2022, he was fired (by Devlin, not his immediate supervisor, Kennedy) because: (a) he provided negative though truthful information about Defendants' employment practices in the Denton's investigation; (b) he refused

Devlin's September 9, 2021 order to fire Martinez-Smith in retaliation for her complaining about discrimination and a hostile work environment; (c) he refused Devlin's September 9, 2021 order to "fix" his "relationship" with Tabak, who was the perpetrator of the harassment against Martinez-Smith and Johnson (and other women); and (d) after Martinez-Smith settled her case, he continued to speak out against and try to fix the anti-woman hostile work environment at Defendants, where he was President. Miller also vocally fought against and tried to change Defendants' systematic discrimination against women and fought against the conspiracy at the highest levels of the company to keep the issue hidden.

75.     As a direct, foreseeable, and legal result of Defendants' conduct, Miller has suffered and continues to suffer substantial losses in employment potential and in earnings, bonuses, deferred compensation, and other employment benefits, and has suffered and continues to suffer substantial embarrassment, extreme and severe humiliation, mental anguish, and emotional distress, all to his damage in an amount according to proof. Miller has incurred and will incur medical and other incidental expenses for treatment by health professionals.

76.     Defendants committed the conduct alleged herein maliciously, fraudulently, and oppressively with the wrongful intention of injuring Miller, from a willful improper motive amounting to malice, and in conscious disregard of Miller's rights and for the deleterious consequences of Defendants' conduct. Defendants had actual and constructive knowledge of the conduct described and alleged herein and, through their managing agents and/or supervisors, authorized, condoned, and ratified the unlawful conduct. Miller is thus entitled to recover punitive damages in an amount according to proof.

77.     As a result of the conduct alleged herein, Miller is entitled to prejudgment interest, reasonable attorneys' fees, and costs.

## FOURTH CAUSE OF ACTION

(Harassment in Violation of Title VII of the Civil Rights Act of 1964, Against All Defendants)

78.     Miller realleges and incorporates by reference all prior Paragraphs as if fully set forth herein.

79.     At all times material hereto, Defendants were an employer and Miller an employee

1   as defined by Title VII.

2      80.   Title VII requires employers to refrain from harassing an employee based on the

3   employee's sex, and to provide each employee with a work environment free of harassment.

4      81.   Defendants subjected Miller to unwanted harassment because of his sex, as

5   discussed above. Defendants were aware of and participated in this harassment.

6      82.   The harassing conduct was so severe and/or pervasive as to alter the conditions of

7   Miller's employment and create a hostile and abusive work environment that affected tangible

8   aspects of his compensation, terms, conditions, and/or privileges of employment. Defendants

9   created and allowed to exist a hostile work environment for Miller and harassed him because of

10  his sex.

11     83.   The harassing conduct was so widespread and/or persistent that a reasonable

12  person in Miller's circumstances would have considered the work environment to be hostile

13  and/or abusive, and Miller in fact considered the work environment created by Defendants to be

14  hostile and/or abusive. Indeed, Kennedy's harassing conduct was so egregious and inappropriate

15  that a female colleague of Kennedy's and Miller's remarked to Miller that she (the colleague) felt

16  uncomfortable with Kennedy's behavior and considered it inappropriate.

17     84.   Defendants, including their supervisors, managers, and/or agents, knew or should

18  have known of the harassing conduct and failed to take immediate and appropriate corrective

19  action. Indeed, Miller's direct supervisor, Kennedy, engaged in the harassment.

20     85.   Defendants are vicariously and strictly liable under FEHA for sex-based

21  harassment of Miller by supervisors with immediate or successively higher authority over him

22  within the meaning of Title VII, including but not limited to Kennedy.

23     86.   As a direct, foreseeable, and legal result of Defendants' conduct, Miller has

24  suffered and continues to suffer substantial losses in employment potential and in earnings,

25  bonuses, deferred compensation, and other employment benefits, and has suffered and continues

26  to suffer substantial embarrassment, extreme and severe humiliation, mental anguish, and

27  emotional distress, all to his damage in an amount according to proof. Miller has incurred and

28  will incur medical and other incidental expenses for treatment by health professionals.

87.     Defendants committed the conduct alleged herein maliciously, fraudulently, and oppressively with the wrongful intention of injuring Miller, from a willful improper motive amounting to malice, and in conscious disregard of Miller's rights and for the deleterious consequences of Defendants' conduct. Defendants had actual and constructive knowledge of the conduct described and alleged herein and, through their managing agents and/or supervisors, authorized, condoned, and ratified the unlawful conduct. Miller is thus entitled to recover punitive damages in an amount according to proof.

88.     As a result of the conduct alleged herein, Miller is entitled to prejudgment interest, reasonable attorneys' fees, and costs.

## FIFTH CAUSE OF ACTION

(Harassment in Violation of Government Code section 12940, Against All Defendants)

89.     Miller realleges and incorporates by reference all prior Paragraphs as if fully set forth herein.

90.     At all times material hereto, Defendants were an employer and Miller an employee as defined by FEHA.

91.     FEHA requires employers and employees to refrain from harassing an employee based on the employee's sex, and to provide each employee with a work environment free of harassment.

92.     Defendants subjected Miller to unwanted harassment because of his sex, as discussed above. Defendants were aware of and participated in this harassment.

93.     The harassing conduct was so severe and/or pervasive as to alter the conditions of Miller's employment and create a hostile and abusive work environment that affected tangible aspects of his compensation, terms, conditions, and/or privileges of employment. Defendants created and allowed to exist a hostile work environment for Miller and harassed him because of his sex.

94.     The harassing conduct was so widespread and/or persistent that a reasonable person in Miller's circumstances would have considered the work environment to be hostile and/or abusive, and Miller in fact considered the work environment created by Defendants to be

hostile and/or abusive. Indeed, Kennedy's harassing conduct was so egregious and inappropriate that a female colleague of Kennedy's and Miller's remarked to Miller that she (the colleague) felt uncomfortable with Kennedy's behavior and considered it inappropriate.

95.     Defendants, including their supervisors, managers, and/or agents, knew or should have known of the harassing conduct and failed to take immediate and appropriate corrective action. Indeed, Miller's direct supervisor, Kennedy, engaged in the harassment.

96.     Defendants are vicariously and strictly liable under FEHA for sex-based harassment of Miller by supervisors with immediate or successively higher authority over him within the meaning of FEHA, including but not limited to Kennedy.

97.     As a direct, foreseeable, and legal result of Defendants' conduct, Miller has suffered and continues to suffer substantial losses in employment potential and in earnings, bonuses, deferred compensation, and other employment benefits, and has suffered and continues to suffer substantial embarrassment, extreme and severe humiliation, mental anguish, and emotional distress, all to his damage in an amount according to proof. Miller has incurred and will incur medical and other incidental expenses for treatment by health professionals.

98.     Defendants committed the conduct alleged herein maliciously, fraudulently, and oppressively with the wrongful intention of injuring Miller, from a willful improper motive amounting to malice, and in conscious disregard of Miller's rights and for the deleterious consequences of Defendants' conduct. Defendants had actual and constructive knowledge of the conduct described and alleged herein and, through their managing agents and/or supervisors, authorized, condoned, and ratified the unlawful conduct. Miller is thus entitled to recover punitive damages in an amount according to proof.

99.     As a result of the conduct alleged herein, Miller is entitled to prejudgment interest, reasonable attorneys' fees, and costs.

## SIXTH CAUSE OF ACTION

(Failure to Prevent Discrimination, Harassment, and Retaliation, Against All Defendants)

100.     Miller realleges and incorporates by reference all prior Paragraphs as if fully set forth herein.

101.    At all times material hereto, Defendants were an employer and Miller an employee as defined by FEHA.

102.    FEHA requires employers to take all reasonable steps necessary to prevent discrimination, harassment, and retaliation in the workplace. FEHA also requires employers to take prompt corrective action to address any such misconduct. Defendants failed to take such steps or action.

103.    While performing his job duties, Miller was subjected to harassment account of his sex and/or retaliation for engaging in protected activity, in violation of FEHA.

104.    At all times material hereto, Defendants were aware of and participated in this conduct. Defendants knew or reasonably should have known that the conduct alleged herein would and did cause the harassing and/or retaliatory effects and the physical and emotional distress to Miller as alleged above. Defendants were aware of the harassing and retaliatory conduct to which Miller was subjected, as well as the fact that he found it offensive.

105.    The harassment and retaliation were objectively offensive to reasonable employees in Miller's circumstances. Indeed, Kennedy's harassing conduct was so egregious and inappropriate that a female colleague of Kennedy's and Miller's remarked to Miller that she (the colleague) felt uncomfortable with Kennedy's behavior and considered it inappropriate. Miller himself found the conduct offensive.

106.    At all times herein material, Defendants had the power, ability, authority, and duty to stop engaging in the conduct alleged above and to intervene to prevent or prohibit such conduct.

107.    As a direct, foreseeable, and legal result of Defendants' conduct, Miller has suffered and continues to suffer substantial losses in employment potential and in earnings, bonuses, deferred compensation, and other employment benefits, and has suffered and continues to suffer substantial embarrassment, extreme and severe humiliation, mental anguish, and emotional distress, all to his damage in an amount according to proof. Miller has incurred and will incur medical and other incidental expenses for treatment by health professionals.

108.    Defendants committed the conduct alleged herein maliciously, fraudulently, and

1  oppressively with the wrongful intention of injuring Miller, from a willful improper motive
2  amounting to malice, and in conscious disregard of Miller's rights and for the deleterious
3  consequences of Defendants' conduct. Defendants had actual and constructive knowledge of the
4  conduct described and alleged herein and, through their managing agents and/or supervisors,
5  authorized, condoned, and ratified the unlawful conduct. Miller is thus entitled to recover punitive
6  damages in an amount according to proof.

7      109.    As a result of the conduct alleged herein, Miller is entitled to prejudgment interest,
8  reasonable attorneys' fees, and costs.

9                        **SEVENTH CAUSE OF ACTION**

10          (Wrongful Termination in Violation of Public Policy, Against All Defendants)

11      110.    Miller realleges and incorporates by reference all prior Paragraphs as if fully set
12  forth herein.

13      111.    At all times material hereto, Defendants were an employer and Miller an employee
14  as defined by FEHA.

15      112.    Defendants discriminated against Miller due to his sex and/or retaliated against
16  him because he engaged in protected activity.

17      113.    Defendants terminated Miller in violation of the public policies of the State of
18  California prohibiting harassment and retaliation, as expressed in FEHA, other California statutes,
19  and decisions of the California and federal judiciary.

20      114.    As a direct, foreseeable, and legal result of Defendants' conduct, Miller has
21  suffered and continues to suffer substantial losses in employment potential and in earnings,
22  bonuses, deferred compensation, and other employment benefits, and has suffered and continues
23  to suffer substantial embarrassment, extreme and severe humiliation, mental anguish, and
24  emotional distress, all to his damage in an amount according to proof. Miller has incurred and
25  will incur medical and other incidental expenses for treatment by health professionals.

26      115.    Defendants committed the conduct alleged herein maliciously, fraudulently, and
27  oppressively with the wrongful intention of injuring Miller, from a willful improper motive
28  amounting to malice, and in conscious disregard of Miller's rights and for the deleterious

consequences of Defendants' conduct. Defendants had actual and constructive knowledge of the conduct described and alleged herein and, through their managing agents and/or supervisors, authorized, condoned, and ratified the unlawful conduct. Miller is thus entitled to recover punitive damages in an amount according to proof.

116.    As a result of the conduct alleged herein, Miller is entitled to prejudgment interest, reasonable attorneys' fees, and costs.

## EIGHTH CAUSE OF ACTION

(Failure to Pay All Earned Wages at Separation of Employment (Labor Code sections 201, 203), Against All Defendants)

117.    Miller realleges and incorporates by reference all prior Paragraphs as if fully set forth herein.

118.    At all times relevant herein, Defendants were an employer under the Labor Code.

119.    Pursuant to Labor Code sections 201, 203, and 227.3 and related case law, Defendants were required to pay Miller for all wages earned and owing when Defendants terminated his employment.

120.    Under the terms of Defendants' employment agreement with Miller, Defendants agreed to pay Miller $206,000.04 if they terminated his employment for any reason other than cause.

121.    Defendants terminated Miller's employment on March 4, 2022, for reasons other than cause. Indeed, that same day, Devlin (Nakedwines.com's CEO) wrote: "In addition to the final pay we will pay the lump sum of $206,000.04 which equates to 6 months salary (this will be subject to all applicable taxes etc) under the terms of your contract for termination without cause."

122.    Defendants did not pay Miller for all wages earned and owing upon the termination of his employment. Indeed, though the employment contract required it and Devlin confirmed the obligation that same day, Defendants did not pay Miller the $206,000.04 he was owed until April 19, 2022—i.e., more than 30 days after his final date of employment.

123.    As a direct and proximate result of Defendants' willful, knowing, and intentional

violation of the above laws, Miller was damaged by not receiving all wages owed to him in a timely manner, and is entitled, among other things, to recover including statutory penalties and interest thereon, together with prejudgment interest, reasonable attorneys' fees, and costs, pursuant to Labor Code sections 203, 218.5, and 227.3.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against all Defendants, and each of them, as follows:

1. Compensatory damages, including but not limited to for losses resulting from humiliation, mental anguish, and emotional distress, in amounts to be proven at trial;

2. General and special damages, in amounts to be proven at trial;

3. Statutory penalties;

4. Interest according to law;

5. Exemplary and punitive damages, in amounts to be proven at trial;

6. Costs;

7. Reasonable attorneys' fees; and

8. For such other and further relief as this Court may deem just and proper.

## REQUEST FOR TRIAL BY JURY

Plaintiff requests a trial by jury.

Respectfully submitted,

Date:   July 1, 2022                    SHEIK LAW, INC.


By:      /s/ Mani Sheik
Mani Sheik
Attorneys for Plaintiff Max Miller