ERIC AKIRA TATE, CA SBN 178719
ETate@mofo.com
BYUNG-KWAN PARK, CA SBN 306719
BPark@mofo.com
JINNY S. HWANG, CA SBN 315115
JHwang@mofo.com
SAMUEL A. ISON, CA SBN 339688
SIson@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:     415.268.7000
Facsimile:     415.268.7522

Attorneys for Defendants
NAKED WINES PLC and
NAKEDWINES.COM, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAX MILLER, an individual,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>NAKED WINES PLC, a United Kingdom corporation; NAKEDWINES.COM, INC., a California corporation; and DOES 1 through 20, inclusive,<br><br>　　　　　Defendants. | Case No. 4:22-cv-03900-KAW<br><br>**DEFENDANTS NAKEDWINES.COM, INC. AND NAKED WINES PLC'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: September 1, 2022<br>Time: 1:30 p.m.<br>Courtroom: TBD<br>Judge: Honorable Kandis A. Westmore<br><br>Date Action Filed: July 1, 2022<br>Trial Date: TBD |

**TO PLAINTIFF AND HIS ATTORNEY OF RECORD:**

**PLEASE TAKE NOTICE** that on September 1, 2022, at 1:30 p.m., or as soon thereafter as the matter may be heard in the above-entitled Court, located at 1301 Clay Street, Oakland, CA 94612, defendants Nakedwines.com, Inc. and Naked Wines plc (collectively, "Defendants") will and hereby do move for an order compelling plaintiff Max Miller ("Mr. Miller") to arbitrate his

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES (CASE NO. 4:22-CV-03900-KAW)
SF:4884025

1

claims alleged against them in the above-captioned action and staying this action pending the completion of arbitration proceedings.[1]  This motion is made pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16, and upon the grounds that Mr. Miller agreed to arbitrate his claims when he signed his employment agreement with Nakedwines.com, Inc.

In support of their motion, Defendants rely on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declaration of Tessa Piretti, the Declaration of Eric Akira Tate, and all the pleadings and papers on file herein.

Dated:  July 22, 2022

MORRISON & FOERSTER LLP

By: *s/ Eric Akira Tate*
Eric Akira Tate

Attorneys for Defendants
NAKED WINES PLC and
NAKEDWINES.COM, INC.

---

[1] This motion satisfies Defendants' responsive pleading obligations at this stage.  *See, e.g.*, *Green Tree Fin. Corp. Ala. v. Randolph*, 531 U.S. 79, 83 (2000).  Defendants reserve and do not waive their rights to file a motion under Rule 12(b) of the Federal Rules of Civil Procedure at a later time.  *See Aetna Life Ins. Co. v. Alla Med. Servs., Inc.*, 855 F.2d 1470, 1475 (9th Cir. 1988) (a prior motion to dismiss or stay based on grounds other than Rule 12 does not foreclose a later Rule 12(b) motion).  Naked Wines plc also contends that it is not the proper defendant in this action and reserves and does not waive its right to contest personal jurisdiction.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES (CASE NO. 4:22-CV-03900-KAW)

SF:4884025

2

**STATEMENT OF ISSUES TO BE DECIDED**

This motion raises the following issues:

1. Did Mr. Miller enter into a binding agreement to arbitrate his claims in this case?

2. Does Mr. Miller's arbitration agreement require this Court to compel his claims to arbitration?

3. Should the Court stay this case pending Mr. Miller's arbitration?

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES (CASE NO. 4:22-CV-03900-KAW)

SF:4884025

3

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff Max Miller ("Mr. Miller") filed this lawsuit after he was terminated from his job as President of defendant Nakedwines.com, Inc. ("Nakedwines.com") in Colorado by his female supervisor. In the previous year under a budget and business plan created before Mr. Miller's arrival, Nakedwines.com well outpaced its budget, and the team was awarded 200 percent of their annual bonuses, with Mr. Miller, as the highest paid employee, receiving the highest bonus at Nakedwines.com. But the following year, Nakedwines.com's first full year with Mr. Miller, under his helm and Mr. Miller's budget and business plan, he and the business faltered. Nakedwines.com consistently missed its budget month after month, reaching only 73.3 percent of its forecasted sales and 45.49 percent of forecasted new customers for fiscal year 2022. Further, Mr. Miller was unable to effectively reforecast the budget notwithstanding opportunities to do so, much less lead the team to execute on a business plan to effectively address the problems.

Mr. Miller refuses to acknowledge his failures and instead asserts wrongful termination, retaliation, and other employment law claims, including those under California law that are inapplicable.[2] Mr. Miller also pleads a sexual harassment claim against the female supervisor who fired him, even though he did not lodge any such complaint while still employed. In addition to his claims lacking any merit whatsoever, Mr. Miller erroneously initiated this litigation in violation of his agreement to arbitrate all disputes arising from his employment with Nakedwines.com.

This motion is straightforward. Nakedwines.com and defendant Naked Wines plc (collectively, "Defendants") simply request that this Court hold Mr. Miller to his contractual agreement to arbitrate. Mr. Miller attempts to evade this agreement with fabricated claims of sexual harassment against his female supervisor, arguing that he can do so pursuant to the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act. Not so. The statute applies only to sexual assault and harassment disputes that arise or accrue on or after March 3, 2022.

---

[2] Defendants reserve and do not waive all rights to file a motion under Rule 12(b) of the Federal Rules of Civil Procedure at a later time. Naked Wines plc also contends that it is not the proper defendant in this action and reserves and does not waive its right to contest personal jurisdiction.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES (CASE NO. 4:22-CV-03900-KAW)

SF:4884025

4

Here, on the face of his Complaint, the last alleged harassment occurred on January 21, 2022 and Mr. Miller was fired on March 1, 2022. Accordingly, Defendants respectfully request that this Court grant their motion to compel arbitration and stay this action until the arbitration concludes.

## II.     RELEVANT BACKGROUND

### A.     The parties.

#### 1.     Defendants.

Nakedwines.com is a winery and online marketplace that distributes premium wines from independent winemakers around the world to customers throughout the United States. (Piretti Decl. ¶ 2.) Nakedwines.com's subscribers personally sponsor independent winemakers through monthly contributions to their Nakedwines.com account. (*Id.*) In return, subscribers have access to the wines these winemakers produce at a discount. (*Id.*) As of the date of this filing, Nakedwines.com has over 300,000 subscribers and sponsors more than 120 winemakers around the world. (*Id.*) Naked Wines plc is a parent company of Nakedwines.com. (*Id.* ¶ 3.) Naked Wines plc never employed Mr. Miller, is incorporated in the United Kingdom, and has its principal place of business in Norwich, United Kingdom. (*Id.*)

#### 2.     Mr. Miller.

Mr. Miller is the former President of Nakedwines.com. (*Id.* ¶ 1.) Nakedwines.com extended a written employment offer to Mr. Miller on February 15, 2020, that refers to and incorporates an arbitration agreement (the "Arbitration Agreement"). (*Id.* ¶ 4, Ex. A.) Mr. Miller accepted Nakedwines.com's employment offer, including the Arbitration Agreement, on February 19, 2020. (*Id.*)

Mr. Miller joined Nakedwines.com on April 6, 2020. (*Id.* ¶ 5.) As the President, Mr. Miller had overall business responsibility over Nakedwines.com, including preparing Nakedwines.com's budget and planning process. (*Id.*) At the time Mr. Miller was hired, however, Nakedwines.com had already finalized its financial plan and budget for fiscal year 2021, which ran from April 2020 through March 2021. (*Id.*) Based on this planning, Nakedwines.com's performance exceeded expectations that fiscal year. (*Id.*)

Fiscal year 2022, which ran from April 2021 through March 2022, was the first year

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES (CASE NO. 4:22-CV-03900-KAW)
SF:4884025

5

Mr. Miller was in charge of the budget and planning process for Nakedwines.com.  (*Id.* ¶ 6.) Mr. Miller's faults became apparent during this period, as he oversaw the creation of a budget that Nakedwines.com came nowhere near being able to meet.  (*Id.*)  By the end of August 2021, for example, Nakedwines.com's sales were over $7.5 million behind its projections.  (*Id.*)  Bonus targets for Nakedwines.com's entire workforce were tracking at zero percent.  (*Id.*)  In an effort to turn things around and give Nakedwines.com employees an opportunity to earn at least some portion of their bonuses, Nakedwines.com gave Mr. Miller a chance to revise his projections.  (*Id.*)  This led to Nakedwines.com lowering its sales target by $50 million.  (*Id.*)  Still, by the end of the fiscal year, Nakedwines.com's sales were $25 million behind the new target and reached only 73.3 percent of Nakedwines.com's forecasted sales and 45.59 percent of forecasted new customers.  (*Id.*)

Given these failures, among others, Mr. Miller's supervisor, a former peer who recently had been promoted over Mr. Miller, terminated Mr. Miller's employment.  (*Id.* ¶ 7.) Nakedwines.com informed Mr. Miller about his termination on March 1, 2022.  (*Id.*)  Mr. Miller stopped working for Nakedwines.com on March 1, 2022, but Nakedwines.com paid him through March 4, 2022.  (*Id.*)

### B.   The arbitration agreement to which Mr. Miller agreed.

In the Arbitration Agreement, Mr. Miller agreed to arbitrate "any and all" employment-related disputes with Nakedwines.com.  (*Id.* ¶ 4, Ex. A § 11; *see also* Dkt. No. 1 at 4 (Compl. ¶¶ 14-15) (acknowledging existence of arbitration agreement).)  The employment offer that Mr. Miller negotiated and accepted described in plain terms various salient features of the Arbitration Agreement, notably including that he was "waiv[ing] the right to resolve any such dispute through a trial by jury or judge or administrative proceeding."  (Piretti Decl. ¶ 4, Ex. A § 11.)

The Arbitration Agreement was included as Section 11 of the February 19, 2020 written employment offer.  (*Id.*)  Specifically, the Arbitration Agreement applies to "any and all disputes, claims, or causes of action, in law or equity, arising from or relating to the enforcement, breach, performance, or interpretation of this letter agreement, your employment with the Company, or the termination of your employment."  (*Id.*)  Nakedwines.com agreed to pay all "arbitration fees

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES (CASE NO. 4:22-CV-03900-KAW)

SF:4884025

6

in excess of the administrative fees that you would be required to pay if the dispute were decided in a court of law." (*Id.*)  Neither Mr. Miller nor Nakedwines.com is permitted to pursue court action regarding claims that are subject to arbitration.  (*Id.*)

### C. Mr. Miller ignored his arbitration agreement and filed suit.

Mr. Miller's counsel was provided a copy of the Arbitration Agreement on April 6, 2022. (Tate Decl. ¶ 2.)  On April 14, 2022, Nakedwines.com again reminded Mr. Miller that should he insist on pursuing his meritless claims, he must arbitrate them.  (*Id.* ¶ 3.)  On July 1, 2022, before Mr. Miller filed his Complaint, Nakedwines.com yet again reminded Mr. Miller about his contractual obligation to arbitrate and explained why the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act did not apply here under the statute's plain language.   (*Id.* ¶ 4.)  Mr. Miller ignored the communication and filed suit in this Court anyway.  (*Id.*)

### D. This lawsuit.

Mr. Miller's claims arise from conduct which allegedly occurred between October 13, 2021 and March 1, 2022.  Specifically, Mr. Miller alleges that "[o]n October 13, 2021, [he] was demoted and, on March 1, 2022, he was fired" by Nakedwines.com.  (Dkt. No. 1 at 12 (Compl. ¶ 65.))  Mr. Miller also alleges that between January 1, 2022 and January 21, 2022, he was sexually harassed by his female supervisor.  (*Id.* at 8 (Compl. ¶¶ 41-44.))

Based on these allegations, Mr. Miller asserts eight causes of action for (1) retaliation in violation of California Labor Code section 1102.5; (2) retaliation in violation of Title VII of the Civil Rights Act of 1964;  (3) retaliation in violation of California Government Code section 12940; (4) harassment in violation of Title VII of the Civil Rights Act of 1964; (5) harassment in violation of California Government Code section 12940; (6) failure to prevent discrimination, harassment, and retaliation; (7) wrongful termination in violation of public policy; and (8) waiting time penalties pursuant to Labor Code sections 201 and 203.  (*Id.* at 10-21 (Compl. ¶¶ 52-123.))

## III. LEGAL STANDARD

The Federal Arbitration Act ("FAA") reflects a liberal federal policy favoring arbitration, and requires that arbitration agreements be rigorously enforced.  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).  Under the FAA, arbitration agreements "shall be valid,

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES (CASE NO. 4:22-cv-03900-KAW)

SF:4884025

7

1  irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the
2  revocation of a contract." 9 U.S.C. § 2.  "Once the Court has determined that an arbitration
3  agreement relates to a transaction involving interstate commerce, thereby falling under the FAA,
4  the court's only role is to determine whether a valid arbitration agreement exists and whether the
5  scope of the dispute falls within that agreement." *Gonzalez v. Interstate Cleaning Corp.*, Case
6  No. 19-cv-07307-KAW, 2020 WL 1891789, at *2 (N.D. Cal. Apr. 16, 2020) (citations omitted);
7  *see also Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (same).
8  "As arbitration is favored, those parties challenging the enforceability of an arbitration agreement
9  bear the burden of proving that the provision is unenforceable." *Mortensen v. Bresnan*
10 *Commc'ns, LLC*, 722 F.3d 1151, 1157 (9th Cir. 2013) (citing *Green Tree Fin. Corp.-Ala. v.*
11 *Randolph*, 531 U.S. 79, 91 (2000)).

12 **IV.    ARGUMENT**
13        **A.    The FAA governs the Arbitration Agreement.**
14        By its terms, the FAA applies to "[a] written provision in any . . . contract evidencing a
15 transaction involving commerce to settle by arbitration a controversy thereafter arising out of
16 such contract or transaction." 9 U.S.C. § 2.  This statutory language signals "an intent to exercise
17 Congress' commerce power to the full." *Allied-Bruce Terminex Cos., Inc. v. Dobson*, 513 U.S.
18 265, 277 (1995).  Thus, if an agreement's contemplated economic activity "bear[s] on interstate
19 commerce in a substantial way," the FAA applies to the Arbitration Agreement. *Citizens Bank v.*
20 *Alafabco, Inc.*, 539 U.S. 52, 57 (2003) (citations omitted).
21        Mr. Miller's employment was inextricably tied to Nakedwines.com's interstate business
22 activities.  Nakedwines.com sells products and services to customers in 44 states and DC.  (Piretti
23 Decl. ¶ 2.)  As the former President, Mr. Miller had overall responsibility over Nakedwines.com's
24 business, including increasing Nakedwines.com's sales and customers nationwide.  (*Id.* ¶ 5.)  It
25 follows that Nakedwines.com's business—and Mr. Miller's employment in that business—
26 "bear[s] on interstate commerce in a substantial way." *Citizens Bank*, 539 U.S. at 57 (citations
27 omitted).
28

**B.      Mr. Miller's valid arbitration agreement requires arbitration of this action.**

Mr. Miller knowingly and voluntarily entered into the Arbitration Agreement, which covers all of the claims he asserts in the Complaint. Under the FAA, courts are required to compel arbitration upon a showing that (1) a valid arbitration agreement exists, and (2) it covers the present controversy. 9 U.S.C. §§ 2, 4; *see Chiron Corp.*, 207 F.3d at 1130. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that the district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). Mr. Miller attempts to evade his contractual obligation to arbitrate by arguing that the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act applies here, but as explained below, it does not because the alleged incidents of sexual harassment (all of which Nakedwines.com denies) occurred prior to March 3, 2022, the statute's effective date. *See infra* Section IV(B)(2). Moreover, in evaluating a motion to compel under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

As such, this Court's role is limited to determining whether the Arbitration Agreement is valid, and whether it encompasses the dispute. Here, the answer to both questions is a yes.

**1.      Mr. Miller and Nakedwines.com entered into a valid arbitration agreement.**

Mr. Miller cannot dispute the Arbitration Agreement's existence and validity. When determining the existence of an agreement to arbitrate, courts "should apply ordinary state-law principles that govern the formation of contracts." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003). "[U]nder California law, the essential elements of contract formation are [p]arties capable of contracting; (2) [t]heir consent; (3) [a] lawful object; and (4) [s]ufficient cause or consideration." *Norcia v. Samsung Telcomms. Am., LLC*, 845 F.3d 1279, 1284 (9th Cir. 2017) (citations omitted); Cal. Civ. Code § 1550.

Here, the parties were legally capable of entering into a contract. Mr. Miller is of legal age to enter into a contract, and as someone who was being hired as Nakedwines.com's President

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES (CASE NO. 4:22-CV-03900-KAW)

SF:4884025

9

and who actively negotiated his written employment offer, appears to be of sound mind for purposes of his capacity to contract. Both Mr. Miller and Nakedwines.com were obviously capable of contracting and did so. Nakedwines.com sent Mr. Miller an employment offer with the Arbitration Agreement, which is bolded, underlined, and located on the same page as the signature section of the employment offer, and Mr. Miller accepted. An employment contract is lawful, as is an arbitration agreement. And, Nakedwines.com's employment of Mr. Miller, its agreement to arbitrate employment-related disputes, and its payment of Mr. Miller's compensation and benefits all constituted sufficient consideration to create a contract between the parties. (Piretti Decl. ¶ 4, Ex. A.)

While Naked Wines plc, was not a signatory to the Arbitration Agreement, it can also enforce the Arbitration Agreement to arbitrate under the doctrine of equitable estoppel. "[A] litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009)). California law allows a nonsignatory defendant to invoke an arbitration clause under the doctrine of equitable estoppel "when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement." *Ngo v. BMW of N. Am., LLC*, 23 F.4th 942, 949 (9th Cir. 2022) (citation omitted). Here, each of Mr. Miller's claims arise from his employment with Nakedwines.com, and he joins Naked Wines plc as a defendant based on his belief "that each and all the conduct alleged herein was performed by, or is attributable to, Naked Wines plc, Nakedwines.com." (Dkt. No. 1 at 3 (Compl. ¶ 11).)

Under the FAA, the Arbitration Agreement is thus "valid, irrevocable, and enforceable" as a matter of law "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *Moses H. Cone Memorial Hosp.*, 460 U.S. at 24. No such grounds exist—meaning a valid arbitration agreement exists and should be enforced.

**2.     The Arbitration Agreement covers this entire action.**

Because the scope of an arbitration agreement is a matter of contract, determining whether a dispute is subject to arbitration is a matter of contract interpretation. *AT&T Mobility LLC*, 563 U.S. at 351 ("Arbitration is a matter of contract, and the FAA requires courts to honor parties' expectations." (citation omitted)); *Ferguson v. Corinthian Colls., Inc.*, 733 F.3d 928, 937–38 (9th Cir. 2013) (courts must look to "the express terms of the agreements at issue" to determine whether the parties have agreed to arbitrate their claims (citation omitted)).

Here, Mr. Miller agreed to arbitrate any dispute arising from his employment relationship with Nakedwines.com. (Piretti Decl. ¶ 4, Ex. A § 11.) Indeed, the Arbitration Agreement defines the scope of arbitrable disputes to include "any and all disputes, claims, or causes of action, in law or equity, arising from or relating to the enforcement, breach, performance, or interpretation of this letter agreement, your employment with the Company, or the termination of your employment." (*Id.*) Each of Mr. Miller's claims is predicated on his employment with and termination from Nakedwines.com. Accordingly, this action falls squarely within the scope of the Arbitration Agreement.

Mr. Miller nonetheless attempts to evade his contractual obligation to arbitrate by arguing that the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act (the "Act") applies to this action. (Dkt. No. 1 at 4 (Compl. ¶¶ 14-15).) Not so. Although the Act allows an individual "alleging conduct constituting a sexual harassment dispute or sexual assault dispute" to void a pre-dispute arbitration agreement, it only applies "with respect to any dispute or claim that arises or accrues on or after the enactment of the Act." 9 U.S.C. § 401, note. The Act was enacted on March 3, 2022. *Id.*[3]

As pleaded by Mr. Miller in his Complaint, it is undisputed that the alleged incidents of sexual harassment (all of which Nakedwines.com denies) occurred prior to March 3, 2022. (*See* Dkt. No. 1 at 9 (Compl. ¶¶ 42-44) (last alleged harassment occurred on January 21, 2022 and Mr.

---

[3] To the extent that there is any ambiguity about how the Act should apply here, that ambiguity should be resolved in a way that ensures that the statute is wholly prospective. *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994) (given constitutional issues with retroactive law and concerns of fundamental fairness, statute does not operate retroactively absent clear congressional intent favoring such result). Congress provided no such indication here. 9 U.S.C. §§ 401-402.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES (CASE NO. 4:22-CV-03900-KAW)

SF:4884025

11

1  Miller was fired on March 1, 2022).)  Under federal and California law, sexual harassment claims
2  accrue when an employee knows or has reason to know of the alleged unlawful employment
3  action.  *Lukovsky v. City & Cnty. of S.F.*, 535 F.3d 1044, 1048 (9th Cir. 2008) (Title VII); *Pollock*
4  *v. Tri-Modal Distrib. Servs., Inc.*, 11 Cal. 5th 918, 929 (2021) (California Fair Employment and
5  Housing Act).   As Mr. Miller's sexual harassment claims accrued before March 3, 2022, the Act
6  does not apply, and this action must be compelled to arbitration.

7  In addition to sexual harassment, Mr. Miller makes claims of retaliation, wrongful
8  termination, and alleged Labor Code violations.  (Dkt. No. 1 at 1 (Compl.))  These claims,
9  however, are not sexual harassment or sexual assault claims and do not fall within the scope of
10  the Act.  *See* 9 U.S.C. § 401(4) ("The term 'sexual harassment dispute' means a dispute relating
11  to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or
12  State law.").  Thus, even if the Act applied to Mr. Miller's sexual harassment claims (and it does
13  not), it does not apply to these remaining claims, which must be sent to arbitration.

14         **C.**       **This action should be stayed pending the arbitration's completion.**

15  The FAA "mandates that district courts *shall* direct the parties to proceed to arbitration on
16  issues as to which an arbitration agreement has been signed."  *Munro v. Univ. of S. Cal.*, 896 F.3d
17  1088, 1091 (9th Cir. 2018) (emphasis in original) (citations omitted).  Here, Mr. Miller entered a
18  valid and binding contract to arbitrate, and this Agreement covers Mr. Miller's claims.  Because
19  "[t]he Federal Arbitration Act requires a court to stay an action whenever the parties to the action
20  have agreed in writing to submit their claims to arbitration,"  this action should be stayed pending
21  the results of individual arbitration.  *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1048 (9th
22  Cir. 1996); 9 U.S.C. § 3.

23  **V.**       **CONCLUSION.**

24  Mr. Miller voluntarily entered into the Arbitration Agreement compelling the arbitration
25  of his claims against Nakedwines.com.  For all the foregoing reasons, Defendants respectfully
26  request that this Court grant their motion to compel arbitration and stay this action until the
27  arbitration concludes.
28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES (CASE NO. 4:22-CV-03900-KAW)
SF:4884025
12

Dated: July 22, 2022

MORRISON & FOERSTER LLP

By: *s/ Eric Akira Tate*
　　Eric Akira Tate

Attorneys for Defendants
NAKED WINES PLC and
NAKEDWINES.COM, INC.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES (CASE NO. 4:22-CV-03900-KAW)

SF:4884025

13