Mani Sheik (SBN 245487)
SHEIK LAW, INC.
526 Third Street, Suite A
San Rafael, CA 94901
Tel: (415) 205-8490
Fax: (415) 796-0875
Email: mani@sheiklaw.us

Attorneys for Plaintiff Max Miller

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Max Miller, an individual,<br><br>Plaintiff,<br><br>v.<br><br>Naked Wines plc, a United Kingdom corporation; Nakedwines.com, Inc., a California corporation; and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No.: 22-cv-03900-KAW<br><br>**Plaintiff's Opposition to Defendants' Motion to Compel Arbitration and Stay Proceedings**<br><br>Date: October 6, 2022<br><br>Time: 1:30 p.m.<br><br>Courtroom: Zoom/Teleconference<br><br>Complaint Filed: 7-1-22<br><br>Judge: Honorable Kandis A. Westmore<br><br>Trial Date: Not Yet Determined |

## I.     Introduction

Defendants Nakedwines.com, Inc.'s and Naked Wines plc's ("Defendants") Motion to Compel Arbitration and Stay Proceedings ("Motion") is as "straightforward" as Defendants say. (ECF No. 9, 4:21) Indeed, the relevant arguments in the Motion comprise just three-paragraphs. (*Id.* at 11:16-12:13) The disposition of the Motion is equally straightforward—in Plaintiff's favor.

The Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ("Act" or "EFASASHA") became effective on **March 3**, 2022, and applies to "any dispute or claim that **arises or accrues** on or after" that date. PL 117-90, 136 Stat 26; 9 U.S.C. § 401, note (emphasis added).

Plaintiff Max Miller's ("Plaintiff") sexual harassment claim **"accrue[d]" on March 4**—the day his employment was *actually* terminated. (ECF No. 1 ("Complaint") at ¶ 49) Defendants ignore this key fact. Instead, Defendants focus on March 1—the date they *notified* Plaintiff of his termination and, not coincidentally, two days before the Act's effective date.

Case law is clear that to determine when a claim accrues for a wrongful discharge claim, "the administrative cause of action must accrue and the statute of limitations must run from the time of ***actual*** **termination**. It would *not* run from the earlier date of notification of discharge, because on that date the unlawful practice (that is, the discharge) had not yet 'occurred.'" *Romano v. Rockwell Internat., Inc.*, 14 Cal.4th 479, 493 (1996) (emphases added). Thus, "the date that triggers the running of the limitations period under the FEHA is the date of actual termination." *Id.* at 495.

Whether accidental or deliberate, Defendants fail to inform this Court of both the applicable law and key fact needed to rule correctly on this Motion. Defendants' misleading Motion would have the Court apply an improper legal standard to the wrong accrual date to reach the wrong result. In reality, Plaintiff's claim accrued on March 4 (the correct date, and one day *after* the law went into effect), not March 1 (two days *before* the Act went into effect).

The Court should deny the Motion.

## II. Relevant Factual Background

Since the Motion centers on whether the parties' arbitration agreement is enforceable in the face of the newly enacted EFASASHA, only a handful of facts and dates are relevant here:

- Beginning after January 1, 2022, when she assumed her role as Chief Operating Officer ("COO"), Plaintiff's nominal direct supervisor, Alicia Kennedy, began degrading and harassing Plaintiff by making unwelcome comments of a sexual nature about his physique, profile, and face. (All dates are in 2022 unless otherwise noted.) Kennedy did this both in front of Plaintiff's subordinates and when she was alone with him. (Complaint at ¶¶ 41-42; Declaration of Max Miller in Support of Opposition to Motion ("Miller Dec."), ¶¶ 6-10)

- On and before January 21, during a multi-day work retreat in a ski resort in Colorado, Kennedy repeatedly harassed Plaintiff, both by making repeated comments about his looks and by repeatedly asking him to get in a hot tub with her, which he refused to do. (Complaint at ¶¶ 43-44; Miller Dec., ¶¶ 7-9)

- Kennedy **continued** sexually harassing Plaintiff even after the retreat, including by making repeated comments about his profile and face. (Complaint at ¶¶ 43-44; Miller Dec., ¶¶ 6-10) The harassment continued through the end of Plaintiff's employment.

- For example, on February 28, during an in-person meeting in Denver, Kennedy interrupted a conversation between Plaintiff and a female colleague to comment about Plaintiff's profile and face. After the incident, the colleague told Plaintiff that she (the colleague) felt uncomfortable and thought Kennedy's comment was inappropriate and disrespectful. (Miller Dec., ¶ 10)

- On March 1 (a Tuesday) Defendants notified Plaintiff his employment would be terminated. (*Id.* at ¶ 2; Complaint at ¶ 46; *see also*, ECF No. 9-1 at 3:6 ("Nakedwines.com informed Mr. Miller about his termination on March 1, 2022.")) That day, Nick Devlin (the Chief Executive Officer of Defendant Nakedwines.com, Inc.) and Kennedy called Plaintiff in to a surprise meeting where Devlin told Plaintiff he had decided to dismiss Plaintiff. (Miller Dec., ¶ 2) Devlin and Plaintiff discussed what would be an appropriate last day for Plaintiff's

employment, since Plaintiff needed to transition work to others. Devlin said the end of that week (i.e., Friday, March 4) was an appropriate last day. (*Id.*)

- On <u>March 3</u>, Defendants sent Plaintiff a letter confirming that his employment would terminate effective March 4, and that he would be paid through March 4. (*Id.* at ¶ 3, Exh. 1 ("This letter confirms your end of employment with Nakewines.com **effective March 4, 2022**.") (emphasis added))

- Also on <u>March 3</u>, the EFASASHA became effective. PL 117-90, 136 Stat 26.

- On <u>March 4</u>, Plaintiff's employment was actually terminated. (Complaint at ¶ 49; Miller Dec., ¶¶ 4-5, Exh. 2 (March 4, 2022 email from Devlin to Plaintiff stating "we are terminating your employment with Naked Wines (Nakedwines.com Inc) with a **separation date of 4th March 2022**.") (emphasis added)) Plaintiff continued to work through his last day of employment. (Miller Dec., ¶ 2)

- On July 1, Plaintiff filed this action, which includes sexual harassment causes of action under federal (Title VII) and state law (the Fair Employment and Housing Act ("FEHA")). (Complaint at 14:24-17:24)

**III.   Argument**

    **A.   Plaintiff's Sexual Harassment Causes Of Action Accrued After The EFASASHA Went Into Effect**

Plaintiff was subjected to a hostile work environment that began in January and continued until his separation on March 4.

The EFASASHA allows an individual "alleging conduct constituting a sexual harassment dispute or sexual assault dispute" to void an arbitration agreement and pursue his or her claims in court. PL 117-90, 136 Stat 26. The Act applies to "any dispute or claim that **arises or accrues** on or after the enactment of the Act"—i.e., on or after March 3. 9 U.S.C. § 401, note (emphasis added). The relevant and sole inquiry here, therefore, is when does a cause of action for wrongful discharge and sexual harassment "accrue"? Case law provides a clear answer.

It is black-letter law that in discrimination and harassment cases where the alleged unlawful employment practice includes wrongful discharge (as is the case here), the cause of

action accrues on, and the statute of limitations run from, the **_actual_** termination date, not the date the employee is merely *notified* of the termination. *Romano*, 14 Cal.4th at 493 ("the administrative cause of action **must accrue** and the statute of limitations **must run from the time of _actual_ termination**. It would *not* run from the earlier date of notification of discharge, because on that date the unlawful practice (that is, the discharge) had not yet 'occurred.'") (emphases added); *Richards v. CH2M Hill, Inc.*, 26 Cal.4th 798, 820 (2001) (statute of limitations, and, thus, date of accrual, "for discriminatory termination does not begin to run at the point at which an employee is notified of the termination, but rather **when the termination *actually* occurs**") (emphases added) citing *Romano*. Thus, "the date that triggers the running of the limitations period under the FEHA is the date of actual termination." *Romano*, 14 Cal.4th at 495

As the California Supreme Court explains, "[s]uch an interpretation is consistent with the plain meaning of the statutory language. It is also consistent with the remedial purpose of FEHA to safeguard the employee's right to seek, obtain, and hold employment without experiencing discrimination." *Id.* at 493. What's more, "FEHA itself requires that [courts] interpret its terms liberally in order to accomplish the stated legislative purpose," which is "to safeguard the employee's right to hold employment without experiencing discrimination." *Id.* at 493-94. To do so, "the limitations period set out in the FEHA should be interpreted so as to promote the resolution of potentially meritorious claims on the merits." *Id.* at 494.

Here, it is undisputed that **Plaintiff's actual termination occurred on March 4**. (Complaint at ¶ 49) Indeed, Defendants' contemporaneous communications to Plaintiff confirm as much. On March 3, Defendants sent Plaintiff a letter that "confirms your end of employment with Nakewines.com **effective March 4, 2022**." (Miller Dec., ¶ 3, Exh. 1 (emphasis added)) And on March 4, Devlin emailed Plaintiff to again confirm that "we are terminating your employment with Naked Wines (Nakedwines.com Inc) with a **separation date of 4th March 2022**." (*Id.* at ¶ 4, Exh. 2 (emphasis added)) Plaintiff continued to work through his last day of employment. (*Id.* at ¶ 2) Defendants ignore this critical fact and fail to inform the Court of these key communications, which they themselves sent. (*See* ECF Nos. 9, 9-1, and 9-2)

Said simply, then, because the date of Plaintiff's actual termination was March 4, his

1  claim accrued on March 4. And since March 4 is the day after the EFASASHA went into effect,

2  the Act applies here and voids the arbitration agreement. PL 117-90, 136 Stat 26.

3        The analysis is that simple and disposes of Defendants' Motion in its entirety.

4        Defendants refuse to accept this conclusion, and instead try to confuse the matter by

5  claiming that Plaintiff's employment was terminated on March 1.[1] (*See*, *e.g.*, Motion at 5:1-2

6  ("Mr. Miller was fired on March 1, 2022"), 11:23-12:1 (same)) March 1, however, is the date

7  Plaintiff was *notified* of the termination, not the date of his actual termination. (*Id.* at 6:14

8  ("Nakedwines.com *informed* Mr. Miller about his termination on March 1, 2022") (emphasis

9  added); Complaint at ¶ 46; Miller Dec., ¶ 2) Indeed, Defendants' Motion only mentions March 4

10 *once*. (Motion at 6:14-16 ("Mr. Miller stopped working for Nakedwines.com on March 1, 2022,

11 but Nakedwines.com paid him through March 4, 2022.")) Ignoring reality is no way to prevail on

12 a motion.

13       Defendants also rely on two cases for the proposition that "[u]nder federal and California

14 law, sexual harassment claims accrue when an employee knows or has reason to know of the

15 alleged unlawful employment action." (Motion at 12:1-5, citing *Lukovsky v. City & Cnty. of S.F.*,

16 535 F.3d 1044, 1048 (9th Cir. 2008) (Title VII); *Pollock v. Tri-Modal Distrib. Servs., Inc.*, 11

17 Cal.5th 918, 929 (2021) (FEHA)) Both cases are inapposite, however, as they deal with the issue

18 of accrual in the context of failure to promote claims, not sexual harassment. Indeed, *Lukovsky*

19 does not even deal with harassment, nor does it deal with wrongful discharge. *See* 535 F.3d 1044;

20 *see also*, *Pollock*, 11 Cal. 5th at 933-34 (also not a wrongful discharge case; "our analysis must

---

[1] Defendants also misconstrue the Complaint to argue that "the last alleged harassment occurred on January 21, 2022." (Motion at 5:1; *see also*, *id.* at 7:16-17) Not so. Defendants' selective reading of the Complaint ignores the allegation that Kennedy's comments about Plaintiff's profile and face made at the January 21 retreat were "comments she repeated *afterwards* at other meetings as well." (Complaint at ¶ 43, 8:18-19)

To the extent the Court finds any ambiguity in the Complaint about what the date of actual termination was and/or whether Kennedy's harassment continued up to the date of termination, Plaintiff respectfully requests leave to amend the complaint to remove any such ambiguity and to state conclusively that the actual termination date was March 4, 2022, and that Kennedy's sexual harassment of Plaintiff continued up to the date of termination. (*See* Miller Dec., ¶¶ 5 and 6-10, respectfully)

focus on when the promotion denial occurred" but the "term 'occurred,' by itself, is susceptible to more than one interpretation" in the context of a failure to promote case).

*Pollock* itself distinguished between wrongful discharge cases (like in *Romano*, which it cites with approval) and failure to promote cases (like *Pollock* and *Delaware State College v. Ricks*, 449 U.S. 250 (1980)). *Id.* at 937-39 ("In *Romano*, we declined to apply *Ricks*'s holding under Title VII to a wrongful discharge claim under the FEHA"). Indeed, *Pollock* notes with approval that *Romano* "addressed the meaning of 'occurred' in a FEHA wrongful discharge action" and confirms that "We [the California Supreme Court] held that the limitations period began to run at the time of actual termination rather than at the time of notification." *Id.* at 936. In other words, *Pollock* only confirms the rule from *Romano* that accrual for the purposes of this case is "at the time of actual termination rather than at the time of notification."

Because the date of actual termination is March 4, the Act applies and the Motion fails.

### B. Public Policy Also Favors Applying The EFASASHA To This Case

In considering the general question of when a plaintiff's contract, statutory, and tort causes of action accrued, a court should "take note of the policy underlying the applicable statutes of limitation." *Romano*, 14 Cal.4th at 488. This is because "[c]ivil statutes of limitations protect defendants from the necessity of defending stale claims and require plaintiffs to pursue their claims diligently" and are "'designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them.'" *Id.*

Thus, heeding *Romano* and taking note of the policy underlying the specific statute at issue here, the Court should be mindful of the purpose behind the Act. As Vice President Kamala Harris—who co-sponsored the legislation as a Senator—explained at the bill signing ceremony for the Act: "Forced arbitration silences survivors of sexual assault and harassment. It shields predators instead of holding them accountable and gives corporations a powerful tool to hide abuse and misconduct. And it compels the people of our nation -- and most often the women of

our nation -- to sign away one of their most fundamental rights: the right to seek justice in court." *Remarks By Vice President Harris At Signing of H.R. 4445, "Ending the Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021"*, 2022 WL 621746, at *1 (Mar. 3, 2022). What's more, and contrary to Defendants' arguments [Motion at p. 11, n. 3], Vice President Harris explained that "almost equally as important, [the Act] will apply ***retroactively*** -- (applause) -- invalidating every one of these agreements, no matter when they were entered into." *Id.* (emphasis added).

Here, balancing the policy interests of an employee's "right to seek justice in court" for having been sexually harassed with the interests of preventing "stale claims" is quite easy. Indeed, the analysis here boils down to a mere three days—if Plaintiff's sexual harassment claim accrued on March 4, the Act applies; if on March 1, it does not. Three days is hardly time for lost evidence, faded memories, and disappeared witnesses.

Public policy favors the adjudication of Plaintiff's claims in court, not arbitration. That the Act applies retroactively only solidifies this conclusion.

## IV.    Conclusion

For the reasons above, the Court should deny Defendants' Motion.

Date:  August 12, 2022                                    SHEIK LAW, INC

                                              By:    _____/s/ Mani Sheik_____
                                                     Mani Sheik

## PROOF OF SERVICE

I, Mani Sheik, certify that:

    I am over the age of eighteen years and not a party to this action. I am employed in the County of Marin. My business address is 526 Third Street, Suite A, San Rafael, CA 94901. On August 12, 2022, I served the following document(s) in the following manner on the parties below, through their attorneys of record:

**Plaintiff's Opposition to Defendants' Motion to Compel Arbitration and Stay Proceedings**

    [X]    **Electronic File and Serve**: by using the CM/ECF system, which will send notification of such filing to the counsel of record in this matter who are registered on the CM/ECF system..

| | |
|---|---|
| Eric Tate, Esq.<br>Jinny Hwang, Esq.<br>Kwan Park, Esq.<br>Morrison & Foerster LLP<br>425 Market St.<br>San Francisco, CA 94105-2482 | *Attorneys for Defendants* |

Date:  August 12, 2022

                                        By:      /s/ Mani Sheik
                                                    Mani Sheik