UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAX MILLER,<br><br>    Plaintiff,<br><br>v.<br><br>NAKEDWINES.COM, et al.,<br><br>    Defendants. | Case No. 22-cv-03900-KAW<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. No. 9 |

On July 1, 2022, Plaintiff Max Miller filed the instant lawsuit against Defendants Naked Wines plc and Nakedwines.com, Inc. ("Nakedwines.com"), alleging retaliation and harassment. (Compl., Dkt. No. 1.) Pending before the Court is Defendants' motion to compel arbitration and stay the proceedings. (Defs.' Mot. to Compel Arbitration, Dkt. No. 9.)

The Court deems this matter suitable for disposition without a hearing pursuant to Civil Local Rule 7-1(b). Having reviewed the parties' filings and the relevant legal authority, the Court GRANTS Defendants' motion to compel arbitration.

## I. BACKGROUND

On February 19, 2020, Plaintiff signed a written employment agreement ("Employment Agreement") to serve as Defendant Nakedwines.com's president. (Piretti Decl., Exh. A, Dkt. No. 9-1.) The Employment Agreement included an arbitration clause, which required that all disputes be resolved in binding arbitration. (Employment Agreement ¶ 11.) On April 6, 2020, Plaintiff began his employment as president. (Compl. ¶ 16.)

On August 4, 2021, Chief Financial Officer Maritza Martinez-Smith and Director of Accounting Samantha Johnson made formal complaints of discrimination against Chief Financial Officer and Director Shawn Tabak. (Compl. ¶¶ 19-21.) When interviewed during the internal investigation, Plaintiff confirmed the complaints that Tabak had mistreated Martinez-Smith,

Johnson, and other women because of their sex. (Compl. ¶¶ 23-24.) On September 9, 2021, the investigative report was provided to Tabak and Chief Executive Officer Nicholas Devlin; Plaintiff alleges that Tabak and Devlin learned of Plaintiff's testimony from the report. (Compl. ¶¶ 26-27.) That same day, Devlin and Plaintiff had a meeting, during which Devlin ordered Plaintiff to fire Martinez-Smith because of her complaints and to "fix" his relationship with Tabak. (Compl. ¶¶ 28-29.) Plaintiff refused. (Compl. ¶¶ 28-29.)

On September 24, 2021, Plaintiff participated in another interview, during which he supported Martinez-Smith. (Compl. ¶ 32.) Plaintiff alleges that in retaliation, he was effectively demoted on October 13, 2021, when Defendants created a Chief Operating Officer ("COO") position between Plaintiff and Devlin. (Compl. ¶ 34.) On October 18, 2021, Devlin and the new COO, Alicia Kennedy, had a meeting with Plaintiff in which they criticized Plaintiff for performance issues. (Compl. ¶ 36.) Plaintiff alleges that this was the first of many meetings designed to force him to quit. (Compl. ¶ 36.)

On January 1, 2022, Kennedy assumed her position as Plaintiff's boss. (Compl. ¶ 41.) Plaintiff alleges that Kennedy began degrading and harassing Plaintiff by flirting with him, making sexual comments about his physique, profile, and face, and trying to get Plaintiff in a hot tub with her during a firm retreat. (Compl. ¶¶ 42-44.) Plaintiff alleges that Kennedy engaged in this behavior to compromise him sexually and drive him out of the company, as part of Defendants' conspiracy to get him to quit. (Compl. ¶ 45.)

On March 1, 2022, Devlin and Kennedy convened a meeting with Plaintiff, in which Devlin told Plaintiff that he was fired. (Compl. ¶ 46.) Kennedy, Plaintiff's direct supervisor, said nothing. Devlin refused to tell Plaintiff why he was being fired but stated that it was not for cause. (Compl. ¶ 46.) Defendants contend that Plaintiff stopped working that day, although he was paid through March 4, 2022. (Piretti Decl. ¶ 7.) Plaintiff states that he and Devlin agreed that he would work through March 4, 2022, and that he worked through March 4, 2022. (Miller Decl. ¶ 2, Dkt. No. 19-1.) Plaintiff also provides e-mails from Devlin and People Manager Tessa Piretti confirming that Plaintiff's last day of employment was March 4, 2022. (Miller Decl., Exhs. 1, 2.)

On July 1, 2022, Plaintiff filed the instant case. First, Plaintiff brought three claims for

2

retaliation in violation of California Labor Code § 1102.5, Title VII, and the Fair Employment and Housing Act ("FEHA"), asserting that he was demoted and fired because he provided negative information about Defendants' employment practices during the investigation, refused to fire Martinez-Smith or "fix" his relationship with Tabak, and continued to speak out against "the anti-woman hostile work environment." (Compl. ¶¶ 56, 65, 74.) Second, Plaintiff brought claims for harassment in violation of Title VII and FEHA based on Kennedy's harassing conduct. (Compl. ¶¶ 83, 94, 105.) Third, Plaintiff brought a claim for wrongful termination in violation of public policy, including public policies prohibiting harassment and retaliation. (Compl. ¶ 113.) Finally, Plaintiff brought a claim for failure to pay all earned wages at separation, as per the Employment Agreement, Defendants were required to pay a lump sum of $206,000.04 if Plaintiff was terminated for any reason other than cause. (Compl. ¶ 120.)

On July 22, 2022, Defendants filed the instant motion to compel arbitration. On August 2, 2022, Plaintiff filed his opposition. (Pl.'s Opp'n, Dkt. No. 19.) On August 19, 2022, Defendants filed their reply. (Defs.' Reply, Dkt. No. 20.)

## II. LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of a contract." 9 U.S.C. §2. "Once the Court has determined that an arbitration agreement relates to a transaction involving interstate commerce, thereby falling under the FAA, the court's only role is to determine whether a valid arbitration agreement exists and whether the scope of the dispute falls within that agreement." *Ramirez v. Cintas Corp.*, No. C 04-00281 JSW, 2005 U.S. Dist. LEXIS 43531, at *8 (N.D. Cal. Nov. 2, 2005) (citing 9 U.S.C. § 4; *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)).

## III. DISCUSSION

In the instant case, Plaintiff does not dispute that he entered into a valid arbitration agreement. Rather, Plaintiff argues that the arbitration agreement is not enforceable because of the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ("the Act"). (Pl.'s Opp'n at 1.) The Act, which was enacted on March 3, 2022, provides that "no predispute

arbitration agreement . . . shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute." 9 U.S.C. § 402. "The Act applies to any dispute or claim that arises on or after the date of enactment of this Act." *Newcombe-Dierl v. Amgen*, No. CV 22-2155-DMG (MRWx), 2022 U.S. Dist. LEXIS 140079, at *13 (C.D. Cal. May 26, 2022) (internal quotation omitted).

    Here, Plaintiff contends that his claim accrued on March 4, 2022 because that was the effective date of his termination. (Pl.'s Opp'n at 3-4.) Indeed, the California Supreme Court has explained "that the statute of limitations on a FEHA claim for discriminatory termination does not begin to run at the point at which an employee is notified of the termination, but rather when the termination actually occurs." *Richards v. CH2M Hill, Inc.*, 26 Cal. 4th 798, 820 (2001). As Defendants point out, however, Plaintiff "incorrectly conflates his wrongful termination claim with his sexual harassment claim." (Defs.' Reply at 4.) This is particularly the case where Plaintiff has alleged **no** facts connecting his termination to the sexual harassment he suffered; rather, he repeatedly alleges that he was demoted and fired in retaliation for supporting the complaints of Martinez-Smith and Johnson against Tabak, refusing to fire Martinez-Smith, refusing to fix his relationship with Tabak, and continuing to speak out against and try to fix the anti-woman hostile work environment. (Compl. ¶¶ 56, 65, 74.) Further, Plaintiff specifically alleges that he was not fired by Kennedy, the perpetrator of the sexual harassment. (*See* Compl. ¶¶ 56 ("on March 1, 2022, he was fired (by Devlin, not his immediate supervisor, Kennedy)"), 65, 74.) Thus, even if Plaintiff's termination claim did not accrue until March 4, 2022, the Act does not apply to Plaintiff's termination claim because it is not a sexual harassment claim.[1]

    As to the sexual harassment claim itself, Plaintiff does not address when that claim accrued, instead focusing solely on the effective date of his termination. The California Supreme Court has explained that "a cause of action accrues at the moment when the party alleging injury is

---

[1] Likewise, Plaintiff's claim for failure to pay all earned wages at separation of employment appears to be a contract claim based on a contractual provision to pay a lump sum of $206,000.04 if Plaintiff was terminated for reasons other than cause. (Compl. ¶ 120.) Thus, while this claim likewise would not have "accrued" until after Plaintiff's termination, it would not fall under the Act because it has no connection to the alleged sexual harassment that occurred.

4

entitled to begin and prosecute an action thereon." *Pollock v. Tri-Modal Distribution Servs., Inc.*, 11 Cal. 5th 918, 930-31 (2021). Further, in the context of a disability harassment claim, the California Supreme Court found that where such harassment "does not constitute a constructive discharge, the statute of limitations begins to run . . . *either* when the course of conduct is brought to an end, as by the employer's cessation of such conduct or by the employee's resignation, *or* when the employee is on notice that further efforts to end the unlawful conduct will be in vain." *Richards*, 26 Cal. 4th at 823.

Here, both in his complaint and his declaration, Plaintiff alleges no harassing actions after February 28, 2022. (*See* Compl. ¶ 44 (last harassing act by Kennedy on January 21, 2022); Miller Decl. ¶ 10 (last harassing act by Kennedy on February 28, 2022).) Moreover, there is no dispute that on March 1, 2022, Plaintiff was notified of his termination, effective March 4, 2022. (Compl. ¶ 46; Miller Decl. ¶ 2.) Thus, by March 1, 2022, Plaintiff was on notice that further efforts to end the harassment were "in vain," as Defendants were terminating Plaintiff's employment in a few days. By that point, Plaintiff knew or should have known that Defendants were not going to resolve the sexual harassment (assuming any further events occurred after February 28, 2022), as Defendants were firing Plaintiff for unrelated reasons. Accordingly, Plaintiff's sexual harassment claim accrued prior to the enactment of the Act, and arbitration is required.

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS Defendants' motion to compel arbitration. The Court shall stay the proceedings in the instant case pending resolution of the arbitration. 9 U.S.C. § 3. The parties shall provide a status report within 30 days of the completion of the arbitration or within six months of the date of this order, whichever is sooner.

IT IS SO ORDERED.

Dated: October 24, 2022

_____
KANDIS A. WESTMORE
United States Magistrate Judge